IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 07-cv-00860-WDM-KLM

HARLAN WALTER ASHCRAFT, III,

    Plaintiff,

v.

JAMES L. BEICKER,
TY P. MARTIN
FREMONT COUNTY SHERIFF'S DEPARTMENT,

    Defendants.

## ORDER ON MOTION TO DISMISS

Miller, J.

This matter is before me on a Motion to Dismiss (Docket No. 44) filed by Defendants Sheriff James L. Beicker (Sheriff Beicker), Undersheriff Ty P. Martin (Undersheriff Martin), and Fremont County Sheriff's Department (Fremont) (collectively Defendants). This motion, after taking into account dismissal of certain parties and the filing of a Second Amended Complaint, restates Defendants' arguments in the original Motion to Dismiss, filed July 25, 2007 (Docket No. 12). After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion is granted in part and denied in part.

### Background

This action arises out of Plaintiff's employment as a deputy sheriff with Fremont.

Plaintiff was employed by Fremont from 1999 until his termination in 2005. SueAnn Ashcraft, Plaintiff's wife, was also employed by Fremont until 2003. Prior to the termination of her employment with Fremont, Mrs. Ashcraft filed an employment discrimination lawsuit against Fremont alleging sexual harassment. In their Reply, Defendants allege that this case was resolved in 2001.

In May 2005, after Mrs. Ashcraft was no longer employed by Fremont, Plaintiff accompanied Mrs. Ashcraft to a meeting with Undersheriff Martin at which time they complained that Sergeant Brian Webb (Sergeant Webb) was sexually harassing Mrs. Ashcraft by spreading false rumors while he was in uniform that Mrs. Ashcraft was sexually promiscuous with various local men. Allegedly, immediately after the meeting, Fremont instituted an investigation into Plaintiff's work activities, asking Plaintiff's coworkers if Plaintiff was engaged in any misconduct, "including conduct that was commonly engaged in by Plaintiff's coworkers." (Second Amended Compl. ¶ 22.) Based on the results of this investigation, Plaintiff was terminated on September 27, 2005.

After filing a charge with the Equal Employment Opportunity Commission and receiving a right to sue letter, Plaintiff filed this suit on April 26, 2007 alleging various constitutional claims. Plaintiff initially brought suit against Sheriff Beicker, Undersheriff Martin, Kurt Hammel, Sergeant Webb, and the Board of County Commissioners of Fremont County. Fremont was added as a defendant in the First Amended Complaint. On October 12, 2007, Plaintiff and Defendants filed a stipulation for voluntary dismissal of certain claims and defendants. After dismissal pursuant to the stipulation the only

remaining defendants are Sheriff Beicker, in his official capacity; Undersheriff Martin, in his official capacity; and Fremont. Plaintiff's only remaining claims are (1) freedom of speech and association and (2) retaliation under Title VII.

## Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

## Discussion

1. <u>Freedom of Speech and Association</u>

Generally, Plaintiff claims that Defendants violated his constitutional rights to freedom of speech and association by "creating a hostile and humiliating environment in which he was treated disparately compared to his co-workers and in which he was terminated from his employment" in retaliation for engaging in protected speech.

(Second Amended Compl. ¶ 25.)  Defendants argue that the claims based on both freedom of speech and freedom of association should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

    a.    *Freedom of Speech*

Plaintiff alleges that he engaged in protected speech when he accompanied Mrs. Ashcraft to the meeting with Undersheriff Martin at which they complained that Sergeant Webb, while in uniform, was spreading rumors about Mrs. Ashcraft. Defendants argue that the speech upon which Plaintiff bases his claim is not a matter of public concern.  Plaintiff responds by arguing that the speech was a matter of public concern because it alleged "corruption, impropriety, or other malfeasance on the part of public officials."  I agree with Plaintiff.

A public employee "does not waive all [his] first amendment rights by accepting public employment." *Deschenie v. Bd. of Educ. Of Cent. Consol. Sch. Dist. No. 22*, 473 F.3d 1271, 1276 (10th Cir. 2007) (citing *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1957 (2006)).  However, the "government's interest in regulating the speech of its employees differs significantly from its interest in regulating the speech of the public in general." *Id.* (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).  Therefore, the Tenth Circuit employs a four-part balancing test to determine if an employer has "impermissibly retaliated against a public employee in violation of [the employee's] First Amendment rights."  *Id.* (citation omitted) (acknowledging that the four-part test is based on *Pickering*, 391 U.S. 563 and *Connick v. Meyers*, 461 U.S. 138 (1983)).

First, as a threshold matter, I must determine if the employee's speech "involves

a matter of public concern." *Id.* (citing *Dill v. City of Edmund*, 155 F.3d 1193, 1201 (10th Cir. 1988)). Speech on public issues occupies the 'highest rung of the heirarchy [sic] of First Amendment values,' and is entitled to special protection." *Connick*, 461 U.S. at 145. Therefore, "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti*, 547 S. Ct. at 1958. Indeed, "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without any intrusive oversight by the judiciary in the name of the First Amendment." *Connick*, 461 U.S. at 146.

If the "public concern" threshold requirement is satisfied, I must then "balance[] 'the employee's interest in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Deschenie*, 4736 F.3d at 1276 (citing *Dill*, 155 F.3d at 1201). When balancing the interests, I "must consider 'the manner, time, and place of the speech, as well as the context in which the dispute arose.'" *Id.* at 1279 (quoting *Weaver v. Chavez*, 458 F.3d 1096, 1100 (10th Cir. 2006)). At this stage, the "employer bears the burden of showing the infringement on the employee's speech was necessary to prevent disruption and ensure efficient public services." *Id.* (citing *Cragg v. City of Osawatomie*, 143 F.3d 1343, 1346 (10th Cir. 1998)). Third, if the employee's interest outweighs the government's interest, then the employee bears the burden to show that the employee's speech was "a substantial factor or a motivating factor in the

detrimental employment decision." *Id.* at 1276 (citing *Dill*, 155 F.3d at 1201–02). In the fourth and final step, "if the employee shows the protected speech was a motivating factor, the burden shifts to the employer to show 'it would have taken the same action against the employee even in the absence of the protected speech.'" *Id.* (citing *Dill*, 155 F.3d at 1202). The determination of speech as a matter of public concern and the balancing of interests are matters of law to be determined by the court, while the remainder of the steps are questions of fact for the jury. *Id.* (citing *Gardetto v. Mason*, 100 F.3d 803, 811 (10th Cir. 1996)).

Whether an employee's speech constitutes a matter of public concern must include consideration of the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147. Matters of public concern are those that "relat[e] to any matter of political, social, or other concern to the community" and are not "matters only of personal interest." *Id.* at 146–47. However, to be protected, the speech must not have been made pursuant to the public employee's official duties. *Garcetti*, 126 S. Ct. at 1960 ("We hold that when public employees made statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import." *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988). "In other words, courts customarily focus on whether speech 'was calculated to disclose wrongdoing or inefficiency or other malfeasance on the part of

government officials in the conduct of their official duties' when deciding whether speech qualifies as a matter of public concern." *Patrick v. Miller*, 953 F.2d 1240, 1248 (10th Cir. 1992) (quoting *Koch v. City of Hutchinson*, 847 F.2d 1436, 1445 (10th Cir. 1988)).

In this case, the allegedly protected speech was a complaint to Undersheriff Martin that Sergeant Webb, while on duty and in uniform, was spreading false rumors about Mrs. Ashcraft's sexual relationship with various men. It is clear that the speech was not made as part of Plaintiff's official duties as a deputy sheriff and, therefore, *Garcetti* does not preclude providing First Amendment protection to the speech. *See* 126 S. Ct. at 1960. It is unclear, however, whether the speech was "calculated to disclose wrongdoing or inefficiency or other malfeasance on the part of government officials." *Id.* (quoting *Koch*, 847 F.2d at 1445). Although generally claims of sexual harassment are not matters of public concern because they involve only the specific employee's working conditions, claims that involve harassment but also "involve[] allegations that the public agency or official was not properly performing governmental responsibilities" are matters of public concern. *See David v. City and County of Denver*, 101 F.3d 1344, 1356 (10th Cir. 1996) (distinguishing the facts before it, where the speech was not a matter of public concern, from *Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir. 1989) and *Wren v. Spurlock*, 798 F.2d 1313 (10th Cir. 1986), where the speech was a matter of public concern, on the grounds that *Wulf* and *Wren* "involved allegations that the public agency or official was not properly performing governmental responsibilities"). Furthermore, an allegation that "seeks to expose improper

operations of the government or questions the integrity of governmental officials" constitutes a matter of public concern. *Clinger v. N.M. Highlands Univ.*, 215 F.3d 1162, 1166 (10th Cir. 2000). Under the cited case law and drawing all reasonable inferences in the light most favorable to Plaintiff, I conclude that Plaintiff has alleged facts that are sufficient on their face to support a conclusion that the speech involved a matter of public concern as the complaint questions the integrity of and alleges impropriety by a police officer. Therefore, I must move on to the second step in the First Amendment analysis.

The second step of the First Amendment analysis asks me to balance the interests of Plaintiff with the interests of Fremont. However, the parties have not presented any argument regarding the relevant interests. As Defendants have the burden of demonstrating that their interests outweighed that of Plaintiff's, dismissal of the action is not appropriate now.

      b.    *Freedom of Association*

Plaintiff asserts a claim based under both prongs of freedom of association—the right to freely associate for the purpose of engaging in protected speech and the right to freedom of intimate association. Defendants argue that both of Plaintiff's freedom of association claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). First, Defendants argue that Plaintiff's claim of freedom of association for the purpose of engaging in protected speech fails for the same reason as Plaintiff's freedom of speech claim fails—the speech was not a matter of public concern. However, as discussed above, the allegations in the Second Amended Complaint that Sergeant Webb acted

inappropriately while in uniform may be sufficient to allege that the speech was a matter of public concern. Therefore, Plaintiff's claim that his right to freely associate for purposes of engaging in protected speech shall not be dismissed.

Next, Defendants argue that Plaintiff's claim under freedom of intimate association must fail because Plaintiff has not alleged any intrusion into his marital relationship[1] or any intent on the part of Defendants to so intrude. "[A]n 'allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983.'" *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003) (quoting *Trujillo v. Bd. of County Comm'rs*, 768 F.2d 1186, 1190 (19th Cir. 1985)). Plaintiff focuses his response on whether he has sufficiently alleged an intrusion into his marital relationship. This is, however, not the only element that must be shown to sustain a freedom of intimate association claim—Plaintiff must also allege intent to interfere. In this case, Plaintiff makes no allegation of intent in his complaint or response. Therefore, Plaintiff has failed to state a claim upon which relief may be granted for his claim of a violation of his right to freedom of intimate association.

2. Retaliation in violation of Title VII

Plaintiff also alleges that he was terminated in violation of Title VII for engaging in protected activity. Defendants argue that Plaintiff's claim must be dismissed

---

[1] The Bill of Rights "afford[s] the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). Included in this category are family relationships. *Id.* at 619.

because the activities that Plaintiff engaged in are not protected activities under Title VII. Plaintiff responds that "the intent of Title VII . . . favor[s] a broader construction to include third-party reprisal claims" and that courts have consistently adopted third-party reprisal claims. (Resp. at 16–17.) I agree with Defendants.

To establish a *prima facie* case of retaliatory discharge under Title VII, Plaintiff must show that (1) he engaged in protected opposition to Title VII discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1234 (10th Cir. 2000); *Chavez v. New Mexico*, 397 F.3d 826, 838 (10th Cir. 2005). "The prohibition against retaliation protects conduct short of filing a formal charge—it prohibits discrimination against an individual simply for 'oppos[ing] any practice made an unlawful employment practice by Title VII." *EEOC v. PVNF, LLC*, 487 F.3d 790, 804 (10th Cir. 2007) (citing 42 U.S.C. § 2000e-3(a)) (alteration in original). The Tenth Circuit has found that protected activities can "range from filing formal charges to voicing complaints to superiors." *Id.* (quoting *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) (internal quotations omitted)).

The conduct complained of, however, must be proscribed by Title VII. *See* 42 U.S.C. § 2000e-3. Title VII forbids discrimination against a person because he has "opposed any practice made an unlawful employment practice by this title . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." *Id.* Therefore, the opposition must be to a discriminatory employment practice of the employer, not simply

discriminatory actions engaged in by the employer against members of the public. *Id.*; *Crowley v. Prince George's County, Md.*, 890 F.2d 683, 687 (4th Cir. 1989) (dismissing a claim for retaliation based on "investigating instances of racial harassment perpetrated by police officers against members of the community" because the discrimination was not in the employment context); *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) ("[Plaintiff's] claim of retaliation is not cognizable under Title VII because his opposition was not directed at an unlawful *employment practice* of his employer." (emphasis in original)); *Neely v. City of Broken Arrow, Okla.*, 2007 WL 1574762, at *3 (N.D. Okla. May 29, 2007) ("[A] retaliation claim based on opposition to or investigation of a co-worker's harassment of the public does not state a claim of action under Title VII.").

In this case, Plaintiff alleges that Defendants retaliated against him because he opposed the harassment of his wife by Sergeant Webb. This alleged harassment of Mrs. Ashcraft, however, was not an employment practice as Mrs. Ashcraft no longer worked for Fremont at the time of the alleged harassment. Therefore, Plaintiff has failed to show that he engaged in activity protected by Title VII.

Plaintiff's argument concerning third-party reprisals does not address this deficiency. In *EEOC v. Nalbandian Sales, Inc.*, a case cited by Plaintiff, the court held that a Title VII retaliation claim may be based on the protected activity of a friend or relative of the plaintiff. 36 F. Supp. 2d 1206 (E.D. Cal. 1998) (holding that "third party reprisal claims are actionable under Title VII"). However, the activity for which retaliation is alleged must still be activity that is protected under Title VII. *See Crowley*,

890 F.2d at 687; *Wimmer*, 176 F.3d at 135. In this case, Plaintiff is not claiming that he was retaliated against for his wife's protected activity. Rather, Plaintiff is attempting to claim that he was retaliated against for complaining of harassment against his wife, a person who was not an employee of Fremont. Therefore, Plaintiff's claim is still deficient in that he has not alleged opposition to an activity prohibited by Title VII.

Accordingly, it is ordered:

1. Defendants' Motions to Dismiss (Docket Nos. 12, 44) are granted in part and denied in part.

2. Plaintiff's claims for freedom of intimate association and Title VII retaliation are dismissed with prejudice.

3. Plaintiff's claims for freedom of speech and freedom of association for the purpose of engaging in protected speech remain pending.

DATED at Denver, Colorado, on February 21, 2008.

BY THE COURT:

s/ Walker D. Miller
United States District Judge